PRESTIGE REALTY COMPANY, PETITIONER, v. STATE HIGHWAY COMMISSION, RESPONDENT.

(Filed 20 March 1968.)

**1. Highways § 5;    Eminent Domain § 1—**

Upon a finding that the use of a direct access from adjoining property onto a highway is an obstruction to the free flow of traffic thereon or a hazard to the safety of travelers, the State Highway Commission has authority to prohibit further use of the direct access; if the denial of access involves a taking of property, the owner is entitled to compensation for its taking, the remedy being by proceedings under Chapter 136 of the General Statutes.

**2. Same—    Denial of direct access to a highway held to constitute a taking and to justify compensation.**

The agreement between petitioner's predecessor in title and the Highway Commission for the conveyance of a right of way provided that the owner or his assigns should have no right of access to the highway con-

structed on the right of way except at a designated survey station. The Highway Commission subsequently denied direct access at the designated survey station, but constructed a service road along the right of way adjacent to petitioner's property and parallel to the highway, which connected the streets terminating at the southern end of petitioner's property but which did not connect to any other street or highway. *Held:* The agreement for access contemplated an easement for direct access to the highway at the designated survey station and not access to a service road constructed six years after the agreement, and the denial of such direct access is a taking of a property right, entitling petitioner to just compensation.

**3. Appeal and Error § 28—**

An exception to the findings on the ground that they are based on incompetent evidence cannot be sustained when appellant fails to point out what part of the evidence is incompetent.

APPEAL by respondent from *Ervin, J.,* October 16, 1967 Regular Civil Session IREDELL Superior Court.

This proceeding was instituted by petitioner, Prestige Realty Company, pursuant to the provisions of G.S. 136-19 and Article 2 of Chapter 40 of the General Statutes of North Carolina on August 6, 1962, to recover damages alleged to have been suffered by reason of the appropriation of certain property rights of petitioner by the State Highway Commission, the respondent.

Petitioner is, and was as of June 23, 1960, the owner of certain real property abutting the northern margin of the right of way of Interstate Highway 40 (formerly U. S. Highway 64 Bypass). The property is located near the northern city limits of the City of Statesville, Iredell County, North Carolina.

Petitioner's predecessors in title by right of way agreement dated March 11, 1953, conveyed to respondent an easement 260 feet in width. The right of way acquired was for construction of a controlled access highway, U. S. Highway 64 Bypass, but petitioner's predecessors in title reserved to themselves, their heirs and assigns, a direct access to the highway to be constructed upon said right of way by virtue of the following language appearing in the right of way agreement:

"It is further understood and agreed that the undersigned and their heirs and assigns shall have no right of access to the highway constructed on said right of way except at the following survey station: 101+00."

Petitioner subsequently acquired the subject property, and subdivided a portion thereof for residential purposes. Petitioner caused streets to be laid out and paved in the subdivision.

Respondent utilized the right of way agreement to construct Highway 64 Bypass, a controlled access highway. The highway, as constructed, consisted of a dual-lane, nondivided facility, with one lane for traffic moving in an easterly direction and one lane for traffic moving in a westerly direction. Petitioner had access to said highway via an access road extending from the southern border of petitioner's property and joining the northern edge of said highway at survey station 101+00.

During the year of 1959 the respondent undertook a project to upgrade Highway 64 Bypass to Interstate standards. Pursuant to this project, respondent denied access to all abutting property, including the property of petitioner. Petitioner's access road at survey station 101+00 was closed.

Respondent constructed a service road on its right of way south of petitioner's property and parallel to the northernmost lane of travel of the controlled access facility. Petitioner was allowed full access to the service road but no access to the main lanes of travel. The service road did not junction with the main lanes of travel, but connected with the subdivision streets. Respondent constructed a paved road from U. S. Highway 21, which is west of petitioner's property, to connect with the northwestern corner of the subdivision. Petitioner's direct access point to the controlled access highway was not discontinued until the alternate access route was completed.

Petitioner, by this proceeding, seeks just compensation for the taking of said access point and for damages to the remainder of its property by reason of the taking. Respondent denies that petitioner is entitled to recover for denial of direct access to the main lanes of the controlled access highway, alleging that said denial was an exercise of the police power of the State.

Respondent objected to the appointment of commissioners, and petitioner and respondent both objected and excepted to the report of commissioners and order confirming report of the commissioners, and gave notice of appeal to the Superior Court.

Upon hearing in the Superior Court, on motion of the Highway Commission to determine all issues except the issue of damages, the Superior Court found, as a matter of law, that petitioner sustained a compensable taking of its property right by reason of the closing and elimination of the access point at survey station 101+00. Respondent Highway Commission appealed.

*Attorney General T. Wade Bruton, Deputy Attorney General Harrison Lewis and Assistant Attorney General Henry T. Rosser for respondent appellant.*

*Walser, Brinkley, Walser and McGirt by Gaither S. Walser; Sowers, Avery and Crosswhite by Neil S. Sowers and Kenneth D. Thomas for petitioner appellee.*

BROCK, J. Interstate Highway 40 (formerly U. S. Highway 64 Bypass around the City of Statesville) at the location in question on this appeal is a controlled access highway (G.S. 136-89.49(2) ); and is so treated by both parties in this controversy. The petitioner does not question the authority of the State Highway Commission to close its access road to U. S. Highway 64 Bypass (now Interstate 40). There can be no doubt of the authority of the State Highway Commission upon its finding that the use of a direct access from adjoining property onto such highway is an obstruction to the free flow of traffic thereon, or a hazard to the safety of travelers upon the highway, to prohibit further use of the direct access. Article 6D of Chapter 136 of the General Statutes of North Carolina; *Petroleum Marketers v. Highway Commission,* 269 N.C. 411, 152 S.E. 2d 508. In such event, the remedy of the property owner is by a proceeding under Chapter 136 of the General Statutes, and this is the remedy sought by the plaintiff in this action.

In support of its position that the action of the Highway Commission in closing the access from petitioner's land to U. S. Highway 64 (Interstate 40) did not constitute an appropriation of any property or property right of the petitioner, and therefore was not a compensable taking, the Highway Commission cites G.S. 136-89.48, G.S. 136-89.50, G.S. 136-89.51, and G.S. 136-89.53. If these General Statutes would otherwise allow such a taking without compensation, they are not controlling in this case because they were not enacted until 1957, which was four years after the right of way agreement between the Commission and the petitioner's predecessors in title. *Petroleum Marketers v. Highway Commission, supra.*

Except for the designation of the survey station, the language used in the right of way agreement between the Highway Commission and the petitioner's predecessors in title is identical to the language used in the right of way agreements involved in *Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782, and in *Petroleum Marketers v. Highway Commission,* 269 N.C. 411, 152 S.E. 2d 508. The language in the right of way agreement between the Highway Commission and the petitioner's predecessor in title is as follows:

"It is further understood and agreed that the undersigned and their heirs and assigns shall have no right of access to the high-

way constructed on said right-of-way except at the following survey station: 101 + 00."

In the *Williams* case, it was said:

"The agreement provided the owners $2500 cash, a highway constructed across their land, and a right of access at survey station 761 + 00 right. This right of access was an easement, a property right, and as such was subject to condemnation. Defendant's refusal to allow plaintiffs to enter upon the highway at the point of the easement constituted a taking or appropriation of private property. For such taking or appropriation, an adequate statutory remedy in the nature of a special proceeding is provided."

In the *Petroleum Marketers* case, in ruling that the plaintiff was entitled to compensation, this was said:

"We think the plain meaning of the agreement between the Commission and Mrs. Shelton is that she surrendered whatever claim she, and her successor in interest, might otherwise have to a direct access to Highway 29-70 at other points along the southern boundary of this tract in exchange for a cash consideration and a reservation or grant of a right of direct access 'to the highway constructed on said right of way' at the designated point. The amount of the cash consideration paid to Mrs. Shelton was unquestionably affected by the insertion of this provision in the agreement."

Unquestionably, the agreement to subject the land to the right of way for highway purposes was more easily negotiated by the Highway Commission with petitioner's predecessors in title because of the agreed reservation of direct access from the remaining land to the highway at survey station 101 + 00. Nor can it be seriously questioned that the price paid by the Highway Commission for the right of way was tempered by the agreed reservation of direct access. Also, it is reasonable to assume that the right of direct access enhanced the value of the property in the purchase thereof by the petitioner.

The petitioner, by virtue of the agreement between the Highway Commission and its predecessors in title, had an easement for direct access to the highway at the designated point. If the Commission has destroyed this property right, the petitioner is entitled to just compensation for any damage it may have suffered.

The Highway Commission and the petitioner have stipulated that on June 23, 1960, a sign was erected at the access point at station 101 + 00 advising that access to the main lane of travel of U. S. High-

way 64 (now Interstate 40) would no longer be allowed and that such access is not now allowed. However, the Highway Commission urges that it has satisfied the terms of the original right of way agreement by the construction of a paved eighteen-foot service road along the Commission's right of way parallel to Highway 64 and between Highway 64 and the petitioner's property, to which service road the petitioner has access from all points along its property. Also, the Highway Commission urges that it has opened a previously dedicated road extending Eastview Drive from the petitioner's property in a westerly direction to Highway 21, and that Highway 21 crosses and interchanges with Interstate 40.

The eighteen-foot paved service road lies within the highway right of way and along the southern edge of the petitioner's property. The streets laid out on petitioner's property, which has been subdivided, have access to the service road, and there is further access to the service road from all points along the southern edge of petitioner's property. The service road extends from approximately the eastern border of the petitioner's property to approximately the western border of the petitioner's property, and does not connect with any other streets or highways; it therefore serves only as a connection between the streets in the petitioner's property at their southern terminus. The extension of Eastview Drive to Highway 21 extends from approximately the northwestern corner of petitioner's property in a westerly direction to Highway 21.

The Highway Commission urges that the service road is a highway constructed on the right of way and that permitting access to it at survey station 101 + 00, and at other points, is in compliance with the right of way agreement and that therefore the petitioner has not been deprived of any property right.

The right of way agreement between the Highway Commission and petitioner's predecessors in title is dated March 12, 1953, and is made in connection with Project 6374. The right of way agreement itself refers to plans for said project in the office of the State Highway Commission in Raleigh, and it must be assumed that it was this project that the parties described at the time of entering into the agreement. It would strain the imagination to suggest that at the time of signing the right of way agreement in March of 1953 referring to Project 6374 that the parties had in mind and were describing Projects 8.16377 and 8.16415, which were commenced in September of 1959.

Access to a service road which was constructed under a 1959 project could not reasonably have been the intent of the parties on March 11, 1953. In fact, neither party treated the agreement as describing access to a service road; a 30-foot access at survey station 101 + 00 was ac-

tually connected to U. S. Highway 64 and served the plaintiff's property for several years. We must place a reasonable construction upon the agreement between the Highway Commission and the petitioner's predecessors in title, and we hold that the agreement described a right of way for a direct access to the main traveled portion of Highway 64 at survey station 101 + 00.

The Highway Commission further urges that Judge Ervin's findings of fact are not supported by competent evidence, and that his findings of fact do not support his conclusions of law. In the record on appeal, the Commission states that this cause was heard by Ervin, J., upon the pleadings, the stipulations, and evidence introduced by the Commission. From the findings of fact in the judgment it would appear that the evidence introduced by the Commission was the testimony of certain officers or employees of the Commission; nevertheless, the Commission did not include such evidence in the record on appeal. The bulk of the findings of fact by Ervin, J. were from the admissions in the pleadings and the stipulations of the parties. The Commission does not point out what part of its additional evidence was incompetent, therefore we assume that all the findings of fact were based upon competent evidence. The findings of fact adequately support the conclusions of law.

According to the stipulations and the findings of the Superior Court, the direct access to the main traveled portion of Highway 64 (now Interstate 40) has been closed and destroyed by the Highway Commission. This the Commission was authorized to do in the public interest, but for such taking of its property, the petitioner is entitled to just compensation. *Petroleum Marketers v. Highway Commission, supra.*

*Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 664; and *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732, cited by the Highway Commission, are factually distinguishable because in neither case was there an agreement reserving direct access. *Abdalla v. Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81, also cited by the Highway Commission, is factually distinguishable; in that case the agreement reserved access only to service roads and ramps.

Upon this appeal, the Highway Commission brings forward 7 assignments of error. Assignments of error numbers 3, 4 and 5, which constitute the main thrust of this appeal, have been disposed of by the foregoing; those assignments of error are overruled.

Assignments of error 1 and 2 relate to exceptions taken by the Highway Commission to the failure of the Court (1) to determine the question of petitioner's right to compensation for circuity of

route, and (2) to determine the question whether the ingress, egress and access to and from petitioner's property as provided by the Highway Commission was a reasonable and adequate substitute for the direct access to Highway 64. The Superior Court was not required to answer this first question at the hearing from which this appeal was taken. The second question was answered by the Superior Court in its determination that the closing of the access to the highway at survey station 101 + 00 was a compensable taking. Assignments of error numbers 1 and 2 are overruled.

Assignments of error numbers 6 and 7 are to the refusal of the Superior Court to enter the judgment tendered by the Highway Commission and to the signing and entry of the judgment of record. These assignments of error are overruled.

The order of Ervin, J., is affirmed, and this cause is remanded to the Superior Court of Iredell County for determination by a jury of just compensation for damages, if any, that petitioner may have suffered by reason of the taking of its easement of direct access to the highway at survey station 101 + 00.

Affirmed.

MALLARD, C.J., and BRITT, J., concur.