DR. T. C. SMITH COMPANY, INC., A North Carolina Corporation v.
NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 107

(Filed 30 July 1971)

1. Eminent Domain § 2— land abutting highway — landowner's right
of access

The owner of land abutting a highway has a special right of
easement in the highway for access purposes which cannot be damaged
or taken from him without compensation.

2. Eminent Domain § 2— access to highway — circuity of travel

If afforded reasonable access to the highway on which his property
abuts, the owner is not entitled to compensation merely because of
circuity of travel to reach a particular destination.

3. Eminent Domain § 2— denial of abutter's rights of access — compen-
sation for injury to entire tract

In this inverse condemnation proceeding, plaintiff is entitled to
recover compensation for injury to its entire 13-acre tract of land by
reason of the denial of its abutter's rights of access to an existing
highway when the highway was made a part of a controlled-access
facility, not just for injury to the vacant portion of the tract directly
abutting the highway which is on a level 25-30 feet lower than the
remaining portion of the tract in use for a warehouse-office building
and parking area.

APPEAL by defendant from *Ervin, J.,* October 19, 1970 Ses-
sion of BUNCOMBE Superior Court, transferred for initial appel-
late review by the Supreme Court under General Order of
July 31, 1970, entered pursuit to G.S. 7A-31(b) (4).

Inverse condemnation action under G.S. 136-111.

Plaintiff bases its claim for compensation on G.S. 136-89.53
(a codification of Section 6, Chapter 993, Session Laws of
1957) which, in pertinent part, provides: "The Commission may
designate and establish controlled-access highways as new and
additional facilities or may designate and establish an existing
street or highway as included within a controlled-access facility.
*When an existing street or highway shall be designated as and
included within a controlled-access facility the owners of land
abutting such existing street or highway shall be entitled to
compensation for the taking of or injury to their easements of
access."* (Our italics.)

On July 1, 1968, plaintiff owned in fee simple the tract of
land described in Paragraph 3 of the complaint, subject to (1)

a deed of trust, and (2) a pre-existing easement for the right-of-way of Hanover Street. The location of plaintiff's property, the location of improvements thereon, the location of the pre-existing easement, the location of the controlled-access facility, and the location of the several streets referred to below, are shown on maps identified as plaintiff's Exhibit A and as defendant's Exhibit I. The portion of defendant's Exhibit I necessary to an understanding of the questions presented is reproduced on the map filed herewith.

Prior to July 1, 1968, Hanover Street, then a two-lane highway, was part of the State Highway System. It was designated N. C. Highway 191 and maintained by defendant. Plaintiff's property abutted 711 feet thereon. As an abutting property owner, plaintiff had full rights of access to and from Hanover Street.

Plaintiff acquired the property in 1962 under a deed in which it was described and conveyed as a single tract. Plaintiff constructed thereon a brick warehouse and office building, which face Hanover Street (Highway 191), and a parking area which is visible from Hanover Street. Prior to July 1, 1968, the land between the warehouse-office-parking area and Hanover Street was vacant and had not been put to any particular use. However, it had been improved by the construction of drain tiles and by filling with dirt to make it approximately on grade with Hanover Street.

On July 1, 1968, defendant, in the construction of State Highway Project 8.1904801, fully controlled the entirety of plaintiff's frontage on Hanover Street by the erection of a controlled-access chain link fence along the boundary between plaintiff's unencumbered land and the portion of plaintiff's land which was subject to the pre-existing easement for Hanover Street. The fence also blocked and dead-ended Wilmington Street at its intersection with Highway 191. Plaintiff's abutter's rights of access to Highway 191 were totally denied by the construction of the fence along the controlled-access line.

As part of the project, defendant constructed two public streets, called Seven Oaks Drive and Southwick Lane, which connect Westwood Place with Wilmington Street. Seven Oaks Drive and Southwick Lane, the newly constructed streets, and Westwood Place and Wilmington Street, are public streets of

Asheville and are maintained by Asheville. No business establishment, other than plaintiff's wholesale drug business, is located on any of these streets. Numerous residences are located thereon.

No service or frontage road was constructed by defendant across any portion of plaintiff's property. Present access to plaintiff's property requires travel in excess of five-tenths of a mile from the interchange at the intersection of Highway 191 and Haywood Road, along Asheville streets including Haywood Road, Westwood Place, Seven Oaks Drive, Southwick Lane and Wilmington Street. The distance from blocked and dead-ended Wilmington Street at its intersection with Highway 191 by way of Highway 191, ramps to Haywood Road and the route from there by way of city streets to plaintiff's property is more than a mile.

Prior to July 1, 1968, "(b)esides Hanover Street, the subject property was served almost entirely by Wilmington Street . . . . " When plaintiff's abutter's rights of access to Highway 191 were denied and Wilmington Street at its intersection with Highway 191 was blocked and dead-ended, plaintiff was forced to use what was then "a little dirt road" going back into Westwood Place as its only means of access.

"(T)here is a bank right at the edge of the paved parking area going down to the lower level . . . . " The lower level is vacant land and "is generally level with Hanover Street." The land on which the warehouse-office-parking area is situated is 25 or 30 feet higher than the vacant land. This plateau comprises approximately seven or eight acres of plaintiff's 13-acre tract, the remaining vacant land being on the level of Hanover Street and abutting thereon.

Wilmington Street extends along plaintiff's north property line. The record is silent as to the grade of Wilmington Street as it extends from the warehouse-office-parking area to where it now dead-ends at controlled-access Highway 191. Too, the record is silent as to the difference in elevation between Wilmington Street and plaintiff's property abutting thereon at different locations along plaintiff's property line.

There was no stipulation, finding or testimony as to the distance from the portion of plaintiff's property (unencumbered by pre-existing easement) which abutted former Highway 191

back to the "bank" referred to above. Defendant's Exhibit I indicates it was drawn according to a scale of one inch for each one hundred feet. Applying this scale, the distance appears to be in excess of 350 feet.

Since July 1, 1968, Highway 191 has been a controlled-access facility serving as a connector between Interstate Highways 26 and 40 and U. S. Highways 19 and 23.

The facts narrated above are based on the stipulations, findings of fact to which no exception was noted, or uncontradicted evidence.

In accord with motions therefor by plaintiff and by defendant, the court conducted a hearing pursuant to G.S. 136-108 for determination of all issues raised by the pleadings other than the issue of damages.

In its answer, defendant denied plaintiff's allegations except as "admitted in its Further Answer." In its further answer, defendant alleged facts not inconsistent with those stated above. As a basis of its denial of plaintiff's right to compensation, defendant alleged: "(T)he property described in the Complaint has abutter's rights of access to both Wilmington Street and Southwick Lane and, as aforesaid, by public roads is afforded reasonable access to the public highway systems; that the dead-ending of Wilmington Street and the control of existing abutter's access rights to previously existing Hanover Street was done in the exercise of the police power of the State Highway Commission for the safety, health and welfare of the public and no compensation is due for said exercise of the police powers nor for any circuity of travel necessary to reach a particular destination to and from the property described in the Complaint."

After hearing the court considered the pleadings; the stipulations, which incorporated the maps; interrogatories of plaintiff and defendant's answers thereto; and the testimony of Frank Stacey Smith, an officer of plaintiff. The court declined to sign the judgment tendered by defendant but noted that "some of the proposed findings of fact" set forth therein "are substantially similar to those found in the judgment tendered by plaintiff and signed by the court."

The adjudicatory portion of the judgment provides:

"IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

"1. That the plaintiff's property right of abutter's access to and from North Carolina Highway 191, Hanover Street, and the plaintiff's abutting property was taken by the North Carolina State Highway Commission on July 1, 1968, by the designation and inclusion of North Carolina Highway 191, an existing street and highway to which the plaintiff had full abutter's rights of access within controlled-access facility built under Project No. 8.1904801 and that the plaintiff is entitled to just compensation for the taking of and injury to said easement of access. That the only issue for a jury to pass on in a trial of said action is the difference between the fair and reasonable market value of the plaintiff's tract of land and the improvements located thereon immediately prior to the taking of the plaintiff's easement of access as heretofore set out on July 1, 1968, and the fair and reasonable market value of plaintiff's tract of land and the improvements located thereon immediately after the taking of plaintiff's easement of access to North Carolina Highway 191, Hanover Street." :

Defendant excepted and appealed.

*Bennett, Kelly & Long, by Robert B. Long, Jr., for plaintiff appellee.*

*Attorney General Morgan, Deputy Attorney General White and Assistant Attorney General McDaniel for defendant appellant.*

BOBBITT, Chief Justice.

[1]  "(T)he owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the highway for access purposes. This right of access is an easement appurtenant which cannot be damaged

Smith Co. v. Highway Comm.

or taken from him without compensation. *Abdalla v. Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81; *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129. This easement consists of the right of access to the particular highway upon which the land abuts." *Snow v. Highway Commission,* 262 N.C. 169, 173, 136 S.E. 2d 678, 682 (1964). Accord, *Highway Commission v. Farmers Market,* 263 N.C. 622, 624, 139 S.E. 2d 904, 906 (1965); *Wofford v. Highway Commission,* 263 N.C. 677, 681, 140 S.E. 2d 376, 380 (1965); *Highway Commission v. Nuckles,* 271 N.C. 1, 19, 155 S.E. 2d 772, 787 (1967).

[2] If afforded reasonable access to the highway *on which his property abuts,* the owner is not entitled to compensation merely because of circuity of travel to reach a particular destination. *Snow v. Highway Commission, supra; Highway Commission v. Farmers Market, supra; Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732 (1962); *Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 664 (1964); *Wofford v. Highway Commisison, supra; Highway Commission v. Nuckles, supra.* However, defendant completely cut off and totally denied plaintiff's abutter's rights of direct access to Hanover Street by including it within controlled-access Highway 191.

Under G.S. 136-89.53, when an existing street is included within a "controlled-access facility," the owner of land abutting on such street "shall be entitled to compensation for the taking of or injury to their easements of access." In consequence of the denial of plaintiff's abutter's rights of access and the blocking and dead-ending of Wilmington Street at its intersection with Highway 191, the only available access to and from *any portion* of plaintiff's property and "controlled-access" Highway 191 is by circuitous travel over residential streets, namely, Wilmington Street, Southwick Lane, Seven Oaks Drive, and Westwood Place.

[3] In the judgment it tendered (which the court declined), defendant conceded, as it does now, that plaintiff is entitled to compensation for injury to the portion of its property between the "bank" and "controlled-access" Highway 191. It denied then, as it does now, that plaintiff is entitled to compensation for injury to the warehouse-office-parking area portion of its property. It contends this area should be treated as a separate tract to which plaintiff has reasonable access notwithstanding the blocking and dead-ending of Wilmington Street.

It may be conceded, *arguendo*, there would be merit in defendant's contention *if* the only property owned by plaintiff were the portion east of the "bank"—where the warehouse-office-parking area is situated—which does not abut Hanover Street. *In fact*, this portion is an undefined part of a 13-acre tract which abuts Hanover Street (now "controlled-access" Highway 191) along a frontage of 711 feet.

Although plaintiff used Wilmington Street for access to Hanover Street from its warehouse-office-parking area, the portion of its property which abutted Hanover Street was available as a means of access thereto in the event access thereto by Wilmington Street was denied. The availability of heavy earth-moving equipment, and present methods and practices for grading and constructing ramps, gave assurance that plaintiff could provide access from the warehouse-office-parking area portion of its property to and across the portion of its property which abutted Hanover Street. Difficulties encountered and expense required to provide such access are factors for consideration by the jury in determining what compensation plaintiff is entitled to recover for injury done to *its entire tract* by the denial of its abutter's rights of access to Hanover Street.

Defendant relies largely on *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219 (1959), and on *Highway Commission v. Farmers Market, supra*. These cases are factually distinguishable.

In *Barnes*, the area comprising Tract No. 2 (24.22 acres) was east of Knollwood Street and north of the Easement (a 40-foot private easement previously conveyed) and the area comprising Tract No. 3 (6.72 acres) was east of Knollwood Street and south of the Easement. The right-of-way of the "controlled-access" highway (Winston-Salem East-West Expressway, I-40) included a portion of Tract No. 2 but no part of Tract No. 3 or the Easement. In accordance with the Highway Commission's contention, the *decision* of this Court was that Tract No. 2 and Tract No. 3 were to be considered as a unit in the assessment of damages and *offsetting benefits*. As noted by defendant, the opinion states: "There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages or offsetting benefits in eminent domain cases." The opinion includes a comprehensive re-

view of general principles pertinent to such determination. This excerpt from the opinion is pertinent: "The law will not permit a condemnor or a condemnee to 'pick and choose' segments of a tract of land, logically to be considered as a unit, so as to include parts favorable to his claim or exclude parts unfavorable." 250 N.C. at 386, 109 S.E. 2d at 226.

In *Highway Commission v. Farmers Market, supra,* the action was instituted by the Highway Commission to acquire property rights necessary for the construction of a portion of the Belt Line around Raleigh, a controlled-access highway. The north line of Farmers' 79-acre tract abutted Race Track Road which provided access to U. S. 1-A. The inclusion of Race Track Road within the controlled-access highway denied Farmers' access thereto and access to U. S. 1-A from the northern portion of its property.

The northern and southern portions of Farmers' property were separated by a spur track extending from the property of the Sunshine Biscuit Company to the right-of-way of the Seaboard Air Line Railroad. This Court held Farmers was entitled to compensation for the injury to the northern portion of its property but not to the southern portion thereof. A consideration of the factual situation dispels any impression that the decision supports defendant's contention in the present case. A general description of the 79-acre tract, referred to as having the appearance of a reversed "L," is stated below.

The 79-acre tract was bounded on the east by the right-of-way of the Seaboard Air Line Railroad; on the south by Crabtree Creek; on the west, for a distance of 1383.21 feet from its southwest corner to the property of Sunshine Biscuit Company, by *U. S. 1-A;* thence east, with the southern line of the Sunshine property, 816.36 feet; thence north, with the east lines of the properties of Sunshine and other owners, to the Race Track Road. No part of the 79-acre tract north of the southern line of the Sunshine property abutted U. S. 1-A. The only available access from the northern portion of Farmers' property to *U. S. 1-A* was by way of the southern portion of its property. Such access would require the construction of a road 3000 feet or more in length. Obviously, the southern portion of Farmers' property was not injured by the denial of access *to U. S. 1-A over former Race Track Road* for the simple reason that the

southern portion had direct abutter's access to U. S. 1-A along a frontage of 1383.21 feet.

Although each has been considered, we deem it unnecessary to discuss defendant's exceptions to portions of Judge Ervin's findings of fact. Suffice to say, the judgment is supported by the stipulated facts, findings of fact based on uncontradicted evidence and findings of fact to which no exception was noted.

For the reasons stated, the judgment entered by Judge Ervin is affirmed.

Affirmed.