McCULLOUGH, Judge.
*11 BB & R, LLC ("defendant") appeals from an order entered by the trial court pursuant to a N.C. Gen.Stat. § 136-108 evidentiary hearing. On appeal, defendant argues the trial court erred in concluding that the closure of Dowdle Mountain Road, which abutted defendant's property, was a lawful exercise of police power and therefore not a compensable taking. For the reasons set forth herein, we affirm the trial court's order.
I. Factual Background
Defendant owns a 1.125 acre tract of land in Franklin, Macon County ("the property"). Located on the property is a convenience store and gas *12 station, including diesel fuel facilities. The North Carolina Department of Transportation ("DOT") condemned portions of the property for a public use highway construction project. However, DOT and defendant were unable to agree to a purchase price for the property. As a result, on 21 June 2010, DOT brought a condemnation action against defendant taking a "[f]ee simple title to right of way, and a slope easement for providing lateral support to the highway, or land adjacent thereto ... [and] a temporary construction easement to continue until the completion of the project[.]" DOT did not claim to be acquiring defendant's abutter's rights of access to Dowdle Mountain Road; however, DOT did close the section of Dowdle Mountain Road that abutted the "entire northern frontage" of defendant's property.
On 7 July 2010, defendant filed an answer and admitted that DOT and defendant "ha[d] been unable to agree as to the purchase price of the property." Defendant alleged that the amount DOT deposited with the Clerk of Court was "grossly inadequate" to compensate for the property taken and requested a jury trial to determine proper compensation. On 30 January 2014, DOT filed a motion for a hearing pursuant to N.C. Gen.Stat. § 136-108, specifically requesting that prior to the *11 jury trial, which would address the value of compensation, the court "decide whether the Department of Transportation's actions in closing a portion of Dowdle Mountain Road [wa]s compensable or whether the said actions constitute[d] a non-compensable exercise of the State's police power."
A hearing pursuant to N.C. Gen.Stat. § 136-108 was held at the 10 February 2014 session of Macon County Superior Court, the Honorable Bradley B. Letts presiding. At a hearing pursuant to N.C. Gen.Stat. § 136-108, the trial judge "hear[s] and determine[s] any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken." N.C. Gen.Stat. § 136-108 (2013). At the hearing in this case, the main issue disputed was whether the closing of the portion of Dowdle Mountain Road that abutted the northern front of defendant's property constituted a compensable taking of defendant's property.
Both parties stipulated to the following pertinent facts:
2. Before the taking, the subject property's entire northern frontage, a distance of approximately 338 feet, abutted Dowdle Mountain Road.
*13 3. Before the taking, there was an access point on the property that was oriented north and accessed Dowdle Mountain Road on the subject property's northern boundary.
4. After the taking, Dowdle Mountain Road has been physically closed along the property's entire northern boundary and the property has no access to Dowdle Mountain Road along its northern boundary.
5. After the taking, the property's north-pointing access has been changed to point west, toward Oak Forest Road.
6. Due to the re-routing of Dowdle Mountain Road, the property now has access to the rerouted Dowdle Mountain Road at a point on its eastern boundary.
....
9. The subject property is not restricted by any legal "control of access" as a result of this Project or the condemnation.
10. A vehicle coming off of Highway 441 and desiring to turn into the western access point on the subject property now has to travel around the traffic circle which is an additional driving distance of approximately 650 feet more than it had to travel in the before condition.
11. In order for an 18 wheel truck approaching the property from the east that desires to also exit east off of the property, it now has to go around the traffic circle and enter the west entrance of the property which is an additional driving distance of approximately 275 [feet] more than it had to travel in the before condition.
On 6 May 2014, the trial court concluded "that the re-routing and discontinuance of a portion of Dowdle Mountain Road [wa]s a legitimate exercise of NCDOT's police powers and [wa]s not compensable[.]" Based on the stipulated facts, the trial court concluded that DOT "did not substantially interfere with the Defendants' access" because "the Defendants retain access to all of the same roads in the after condition as they did in the before condition," and that the "minor circuity of travel is not compensable." On 31 May 2014, defendant gave this Court notice of appeal of the trial court's order.
*14 II. Interlocutory Appeal
Generally, this Court reviews a final judgment of the Superior Court, pursuant to N.C. Gen.Stat. § 7A-27(b)(1). An interlocutory order is one that "does not determine the issues[,] but directs some further proceeding preliminary to final decree." Dep't of Transp. v. Rowe, 351 N.C. 172, 174, 521 S.E.2d 707, 708 (1999) (citation and internal quotation marks omitted). An order entered pursuant to N.C. Gen.Stat. § 136-108 is an interlocutory order because "[t]he trial court d[oes] not completely resolve the entire case," but instead "determine[s] all relevant issues other than damages in anticipation of a jury trial on the issue of just compensation." Id. at 174, 521 S.E.2d at 708-09. Here, the trial court's order is an interlocutory order. The order is not a final judgment in the *12 proceeding because the jury still must determine the amount of compensation defendant is entitled to for DOT's taking of its property.
"Generally, there is no right of immediate appeal from interlocutory orders and judgments." Hammer Publ'ns v. Knights Party, 196 N.C.App. 342, 345, 674 S.E.2d 720, 722 (2009) (citation and internal quotation marks omitted). However an interlocutory order is reviewable by this Court when it "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment." Rowe, 351 N.C. at 175, 521 S.E.2d at 709 (citation omitted). The North Carolina Supreme Court has held that condemnation hearing orders "concerning title and area taken are vital preliminary issues" that affect a party's substantial right and thus must be immediately appealed pursuant to N.C. Gen.Stat. § 1-277. Id. at 176, 521 S.E.2d at 709 (citation and internal quotation marks omitted).
Here, the issue is whether the loss of access to Dowdle Mountain Road on the northern frontage of defendant's property constitutes a taking of defendant's appurtenant easement, a legal interest in the road that abuts defendant's property. This issue affects a substantial right because the question of what area was taken is a "vital preliminary issue" that must be determined before proceeding to a jury trial regarding proper compensation. Id. The North Carolina Supreme Court explained that "[o]ne of the purposes of G.S. 136-108 was to eliminate from the jury trial any question as to what land the [State] is condemning and any question as to its title." N.C. State Highway Comm'n v. Nuckles, 271 N.C. 1, 14, 155 S.E.2d 772, 784 (1967). For the jury to determine compensation, it must know whether DOT's action constituted a compensable taking of defendant's appurtenant easement in order to know if the defendant should be compensated for the value of its appurtenant easement. Thus, *15 the interlocutory order affects defendant's substantial right, and we review the merits of defendant's appeal.
III. Discussion
Defendant raises three issues on appeal. Defendant argues the trial court erred by: (A) concluding that the closure of Dowdle Mountain Road along the northern boundary of defendant's property does not constitute a taking; (B) concluding that "the re-routing and discontinuance of a portion of Dowdle Mountain Road is a legitimate exercise of NCDOT's police powers and is not compensable"; and (C) concluding the precedent regarding abutters' rights of access taken to create controlled access roads is not applicable to the present case. We disagree.
Standard of Review
The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.... [U]nchallenged findings of fact are presumed correct and are binding on appeal. The trial court's conclusions of law are subject to de novo review.
DOT v. Webster, --- N.C.App. ----, ----, 751 S.E.2d 220, 226 (2013) (citations and internal quotation marks omitted)
A. and B.
First, in issue (A), defendant contends it is entitled to compensation for the taking of its easement appurtenant in the portion of Dowdle Mountain Road DOT closed. Furthermore, in issue (B), defendant contends that DOT's closure of the portion of Dowdle Mountain Road that abuts its property was not a lawful exercise of police power, but instead constituted a compensable taking. We disagree. Because defendant's arguments (A) and (B) are so closely related, we address these two issues together.
"An owner of land abutting a highway or street has the right of direct access from his property to the traffic lanes of the highway." DOT v. Harkey, 308 N.C. 148, 151, 301 S.E.2d 64, 67 (1983). "This right of access is an easement appurtenant." Snow v. N.C. State Highway Comm'n, 262 N.C. 169, 173, 136 S.E.2d 678, 682 (1964). Here, defendant had an easement appurtenant in *13 Dowdle Mountain Road because "the [defendant's] property's entire northern frontage ... abutted Dowdle Mountain Road." However, "not all interferences with easements of access constitute *16 a compensable taking pursuant to a state agency's power of eminent domain." Harkey, 308 N.C. at 152, 301 S.E.2d at 67.
To determine if the State's action is a compensable taking, the trial court must first determine if the action resulted in eliminating all direct access to the roadway. See Harkey, 308 N.C. at 155, 301 S.E.2d at 69. If the State's action eliminates all direct access to the abutting road, then the action is "a taking as a matter of law." Harkey, 308 N.C. at 158, 301 S.E.2d at 71. "[W]hen all direct access is taken no inquiry into the reasonableness of alternative access is required to determine liability." Id. at 155-56, 301 S.E.2d at 69. In Harkey, the North Carolina Supreme Court determined there was no direct access to the roadway because "[a]ccess [was] only available through a series of local roads which are part of the city street system," and "no frontage or service road directly visible and accessible from the highway ha[d] been provided." Id. at 158, 301 S.E.2d at 70. Accordingly, in Harkey the North Carolina Supreme Court held that there was a taking and that the property owners were entitled to compensation for the loss of direct access to the abutting road. Id. at 149, 301 S.E.2d at 65.
Here, however, DOT's closure of the section of Dowdle Mountain Road that abutted the northern frontage of defendant's property did not eliminate all direct access from defendant's property to Dowdle Mountain Road. There is direct access to the re-routed Dowdle Mountain Road at the eastern boundary of defendant's property. Prior to the re-routing of Dowdle Mountain Road, defendant's property had a service road located at the eastern boundary of its property that connected to an unpaved road, which could be used to access Dowdle Mountain Road. After the completion of DOT's construction project, the service road on the eastern side of defendant's property directly abuts the re-routed Dowdle Mountain Road. In comparing Plaintiff's Exhibit 1, which depicts the property's road access prior to construction, and Plaintiff's Exhibit 3, which depicts the property's road access after completion of the construction, it is clear that defendant's property now has direct access to the re-routed Dowdle Mountain Road from a paved driveway on the eastern side of the property, where the unpaved service road had been located. In fact, the trial court properly concluded that "[p]rior to the taking, the Defendants had two access points, one that led to the four lane Highway 441, and the other onto Dowdle Mountain Road," and "[a]fter the taking, the Defendants still had two access points, one that leads to the four lane Highway 441, and the other onto Dowdle Mountain Road." The access to Dowdle Mountain Road from defendant's property accommodates 18 wheel trucks, thus the new route does not restrict *17 who can access defendant's property. At most, the re-routed road results in a vehicle having to travel a maximum of 650 feet more than it had to travel before to access defendant's property from the highway. These minimal changes do not result in a compensable taking because defendant still has direct access to Dowdle Mountain Road.
Since DOT's actions did not eliminate all direct access to Dowdle Mountain Road, the trial court properly considered whether the DOT exercised its police power in re-routing Dowdle Mountain Road. If direct access to the roadway still exists then the trial court's decision should be "based on a police-power analysis." Harkey, 308 N.C. at 158, 301 S.E.2d at 71. The North Carolina Department of Transportation has the power "to change or relocate any existing roads that the Department of Transportation may now own or may acquire[.]" N.C. Gen.Stat. § 136-18(2) (2013). Thus, "the determinative question is whether reasonable, direct access [to Dowdle Mountain Road] has been provided." Harkey, 308 N.C. at 158, 301 S.E.2d at 71.
Defendant correctly contends that a property owner is entitled to compensation as a matter of law, even if direct access to the abutting road is not completely *14 eliminated, but is substantially interfered with by the State. State Highway Comm'n v. Yarborough, 6 N.C.App. 294, 302, 170 S.E.2d 159, 165 (1969). To determine if the defendant's direct access to the abutting road has been substantially interfered with, the trial court must determine whether a "reasonable means of ingress and egress remains or is provided [.]" Id. at 302, 170 S.E.2d at 165. If the trial court determines there is a "reasonable means of ingress and egress" from the street that previously abutted the property, then the State act is not a compensable taking, but instead a "legitimate exercise of the police power." Id. The North Carolina Supreme Court explained that "those who ... purchase and occupy property in proximity to public roads or streets do so with notice that they may be changed as demanded by the public interest." Sanders et al. v. Town of Smithfield, 221 N.C. 166, 170-71, 19 S.E.2d 630, 633 (1942). Therefore, "[t]o justify recovery ... the damages must be direct, substantial and proximate, and not such as are attributable to mere inconvenience [.]" Id. at 171, 19 S.E.2d at 633. "While the abutting owner has a right of access, the manner in which that right may be exercised is not unlimited.... the sovereign may restrict the right of entrance to reasonable and proper points." Nuckles, 271 N.C. at 21, 155 S.E.2d at 788 (citation and internal quotation marks omitted).
Here, defendant still has "reasonable means of ingress and egress" from Dowdle Mountain Road to the property.
*18 Yarborough, 6 N.C.App. at 303, 170 S.E.2d at 165. Defendant's access to Dowdle Mountain Road was simply re-located to the eastern section of its property due to the re-routing of Dowdle Mountain Road. Defendant erroneously contends the action taken by DOT is analogous to the action taken by the Board of Transportation in Dr. T.C. Smith Co. v. N.C. Highway Commission, where the Board of Transportation "completely cut off and totally denied plaintiff's abutter's rights of direct access to [the abutting street] by including it within [a] controlled-access [h]ighway[.]" Dr. T.C. Smith Co. v. N.C. Highway Comm'n, 279 N.C. 328, 334, 182 S.E.2d 383, 387 (1971). As a result, the property owner had no direct access to the abutting street, and the North Carolina Supreme Court held that the Board of Transportation's act was not a lawful exercise of police power, but instead constituted a compensable taking. Id. at 337, 182 S.E.2d at 388. In the present case, Dowdle Mountain Road was not turned into a controlled access highway. Instead, the portion that abutted the northern frontage of defendant's property was completely closed, and the road was re-routed. Unlike in Dr. T.C. Smith, where the property owner lost all direct access to the abutting road, defendant still has direct access to Dowdle Mountain Road. DOT merely used its police powers to re-route Dowdle Mountain Road and as a result changed where the property's access point to Dowdle Mountain Road is located. Therefore, the trial court did not err in concluding DOT's action was a lawful exercise of police power and thus not a compensable taking.
C.
In the last argument, defendant contends the trial court erred in concluding that Dep't of Transp. v. Harkey, 308 N.C. 148, 301 S.E.2d 64 (1983) and Frander v. Bd. of Transp., 66 N.C.App. 344, 311 S.E.2d 308 (1984) are not applicable because "[c]ompensation for when NCDOT legally controls access, like in the Harkey and the Frander cases, is compensated under a different statute, G.S. § 136-89.53, than the one governing compensation in this case, G.S. § 136-112." We disagree.
Defendant argues on appeal that the trial court's conclusion amounts to holding that a compensable taking of a property owner's abutter's right of access only occurs when DOT makes the abutting road a closed access road. Defendant's argument mischaracterizes the trial court's conclusion. The trial court did not conclude that converting a road to a controlled access highway is the only way to have a compensable taking of an abutter's right of access. Instead, the trial court clarified that when the State makes a road a closed access road that action is distinguishable from completely closing a portion of the road, as was done here.
*15 *19 A controlled access highway is "a State highway, or section of State highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property, or others, shall have only a controlled right or easement of access." N.C. Gen.Stat. § 136-89.49(2) (2013). In both Harkey and Frander, all direct access to the roads that previously abutted the defendants' properties was eliminated when the State turned the abutting roads into closed access roads. See Harkey, 308 N.C. at 149, 301 S.E.2d at 66 (finding that "the church property will have no direct access to the new [controlled access] highway once it is completed"); Frander, 66 N.C.App. at 346, 311 S.E.2d at 310 (concluding the State's controlled access highway project resulted in all direct access from defendant's property to the abutting road being eliminated). The trial court clarified that the State action taken in Harkey and Frander -making the abutting road a closed access road-is distinguishable from the action in this case. We hold that the trial court properly found these cases were distinguishable from the present case.
Defendant is correct in its contention that the action of creating a closed access road is not required to have a compensable taking. In fact, re-routing a road could result in a compensable taking. The main issue is not what action the State took but whether that action eliminated all direct access to the abutting road, as previously discussed. See Harkey, 308 N.C. at 154, 301 S.E.2d at 71.
Not only is the State action of creating a closed access road different from closing a portion of the abutting road, but the applicable statute is also different. N.C. Gen.Stat. § 136-89.53 specifically codifies that when the State converts a road to a closed access road that act results in a compensable taking for property owners with an abutter's right of access to that road. N.C. Gen.Stat. § 136-89.53 (2013)[1] . Defendant is correct that N.C. Gen.Stat. § 136-89.53 does not change the aforementioned case law regarding compensable takings of abutters' rights of access, it simply codifies the result when the State action is converting a road to a closed access road. Id. However, the trial court correctly explains that it would be improper to rely upon case law that is governed by a statute that is inapplicable in this case. Thus, the trial court did not err by *20 concluding that Harkey and Frander were not applicable to the present case based on the fact that DOT did not make Dowdle Mountain Road a controlled access road.
AFFIRMED.
Judges CALABRIA and DIETZ concur.

"The Department of Transportation ... may designate and establish an existing street or highway as included within a controlled-access facility. When an existing street or highway shall be designated as and included within a controlled-access facility the owners of land abutting such existing street or highway shall be entitled to compensation for the taking of or injury to their easements of access." N.C. Gen.Stat. § 136-89.53 (2013).